```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

WARREN K. BAILEY,                }
                                 }
     Plaintiff,                  }
                                 }     CIVIL ACTION NO.
v.                               }     05-AR-1605-S
                                 }
LINKED ECONOMIC DEVELOPMENT      }
and AFFORDABLE HOUSING           }
FOUNDATION, INC.,                }
                                 }
     Defendant.
```

**MEMORANDUM OPINION**

Before the court is the Report and Recommendation (the "Report") of the magistrate judge, to which defendant, Linked Economic Development and Affordable Housing Foundation, Inc. ("Linked"), has filed a timely objection. In the Report, the magistrate judge recommends that Linked's motion for summary judgment be denied.

In this action, plaintiff, Warren K. Bailey ("Bailey"), seeks damages in the amount of $100,000.00 as well as costs and fees resulting from the alleged breach of a real estate sales contract. Bailey contends that, under the terms of the contract, he is entitled to damages as a result of Linked's decision to walk away from the transaction. In response, Linked argues that the contract is invalid because (1) it does not comply with Alabama's Statute of Frauds, (2) certain conditions precedent embodied in the contract were not fulfilled, and (3) Linked was unaware of certain changes

-1-

Bailey made to the text of the contract prior to signing. Under Rule 72(b), Fed. R. Civ. P., and 28 U.S.C. § 636(b)(1), the district court is required to give *de novo* consideration to Linked's motion for summary judgment where, as here, timely objections to the magistrate judge's Report have been made.

For the reasons that follow, the court will deny Linked's motion for summary judgment.

## I. Facts

*a) Background*

This suit involves the validity and proper interpretation of a real estate sales contract. Bailey contracted with Linked to sell a tract of land located in Shelby County, Alabama. Linked, the purchaser, is a Virginia-based charitable corporation engaged in the business of purchasing land at a discount and selling it to developers for full market value. In this type of transaction, the seller is supposed to receive favorable tax treatment for selling to Linked at a discount rather than directly to the developer. Linked's profits from such transactions are invested in the local community.

*b) The Contract*

On June 2, 2004, the parties entered into the contract at issue. On the day of the signing, Jeffery Thompson ("Thompson"), the president of Linked, flew to Alabama for a meeting involving an unrelated real estate transaction. Bailey and Linked had been in

negotiations over the sale for some time and a draft contract had been circulated. Whether Bailey was the predominant draftsman does not appear. While at the airport, Thompson had a brief meeting with Bailey. Bailey brought with him a hard copy of the contract, which both men signed. The document signed at the airport contained marked differences from the earlier drafts. The changes were made that day by Bailey's attorneys. Thompson was unaware of the changes when he signed the contract. Bailey characterizes these changes as a "re-type." However, as the Report discussed, "the changes were far more significant than a mere stylistic change." Report at 6 n.6.

I) <u>Land Description</u>

The contract does not include a precise description of the land being sold. Rather, in the preamble, the contract states that Linked is purchasing "certain parcels of land located in Shelby County, Alabama, consisting of approximately 287 acres, as more particularly described on the Concept Development Plan attached to and made part of this Agreement as Exhibit A . . . ." It is undisputed that a Concept Development Plan was not attached as an exhibit to the contract and therefore whatever more specific description it supposedly contained was never incorporated into the agreement. In fact, no Concept Development Plan was ever thereafter delivered or tendered by either party. Neither do the parties inform the court whether or not a so called "Concept

Development Plan" was ever completed, and if so, who was supposed to devise it.  Neither party argues how essential the "Concept Development Plan" was to the contract formation, except its relevance to the State of Frauds defense.

II) <u>Right to Recover in the Event of Breach</u>

The contract contains a cockamamy provision that defies logic. Section 4 provides that "[w]ithin three (3) business days after the execution of this Agreement . . ., Purchaser shall deliver [a] promissory note evidencing Purchaser's deposit in the original principal amount of One Hundred Thousand Dollars . . . ."  Neither party informs the court whether or not Linked furnished Bailey with a promissory note within three days after June 2, 2004, or at any other time.  The contract goes on to state that if Linked does not terminate the agreement within a specified termination period, it becomes liable under the contract and must replace the promissory note with the equivalent amount in cash, in the care of the escrow agent.  It is undisputed that Linked did not terminate the agreement during the termination period set forth in the contract, and it is this damages provision upon which provides the basis for Bailey bases his claim for $100,000.00 plus costs and fees in damages.  There is no contention, thus far at least, by Linked that its failure to deliver a promissory note and/or its failure to deliver $100,000 constituted notice of termination, or that Bailey could not fulfill an essential element of the contract, i.e., a

guarantee of access from a public road.

    III) <u>Conditions Precedent</u>

The contract also sets forth certain conditions precedent, which, if not fulfilled, would obviate the contractual obligations of the parties. In its motion for summary judgment, Linked argues that because one or more of the conditions was not met, it is entitled to summary judgment on Bailey's claim that it breached the contract.

## II. Summary Judgment Standard

In considering a Rule 56 motion, the court must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The court can enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted).

In its objection to the Report, Linked argues that the magistrate judge applied an incorrect standard of review in evaluating the motion for summary judgment. *See* Def.'s Objections to Mag. Judge's Findings and Recommendations (Doc. #31) at 5-8.

This objection need not be addressed because, in conducting a *de novo* review, this court has independently evaluated Linked's motion for summary judgment. Thus, even if the magistrate judge improperly applied the summary judgment standard, Linked still must satisfy this court, without regard to its failure to satisfy the magistrate judge, that it is entitled to summary judgment. *See Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1267 (11th Cir. 2004).

### III. Analysis

*a) The Motion to Strike*

On September 5, 2006, Linked moved to strike an affidavit that has been filed by Bailey as an evidentiary response to Linked's motion for summary judgment. The said motion was never ruled upon by the magistrate judge, unless implicitly. In order to review *de novo* the conclusions arrived at in the Report, the motion to strike must first be ruled upon.

Rule 56 states that affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). "Evidence inadmissible at trial cannot be used to avoid summary judgment." *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 661 (5th Cir. 1976). "If a supporting or opposing affidavit

fails to conform to Rule 56(e), the opposing party may move to strike the non-conforming portion or portions." *Wynant v. Burlington Northern Santa Fe R.R.*, 210 F. Supp. 2d 1263, 1272 (N.D. Ala. 2002). An affidavit must be based on the affiant's personal knowledge. *CMS Industries, Inc. v. L.P.S. Int'l, Ltd.*, 643 F.2d 289, 295 (5th Cir. 1981). "Facts" which are speculative, conclusory, or conjectural are not admissible.

Linked argues in its motion to strike that Bailey's affidavit should be stricken (1) because an incorrectly numbered page makes the affidavit ambiguous or incomplete, and (2) because Bailey's testimony is not based on personal knowledge and does not set forth facts that would be admissible. Bailey did not respond to Linked's motion to strike. Although the court is not persuaded by Linked's pagination concerns, Linked is correct that portions of Bailey's affidavit are speculative and contain unfounded and therefore inadmissible assertions.

The court agrees that the following statements from Bailey's affidavit is STRICKEN:

- "I submit that the location and description of the property which is the subject of my contract with [Linked] was **well known to everyone involved**." (Bailey's Aff. ¶ 3);

- ". . . and [Linked and ADP representatives] were **clearly aware** of the location and description of

>    the property."  (Bailey's Aff. ¶ 4).

Bailey could permissibly testify that the identity of the property was well known to **him**, and to the steps he took to ensure that the purchasers were or should have been aware of the identity of the property.  He cannot testify as to the actual level of awareness on the part of Linked and ADP.

> - "[I]t was **understood** by all parties involved, including Jeffrey Thompson from [Linked] and Steve Davis and Rick DeGorter from [ADP], that a survey was to be completed subsequent to the execution of the contract which, after completion, would be utilized as the formal legal description of the subsequent property.  Bailey's Aff. ¶ 5.

In this passage, Bailey testifies to two different states of mind as held by the Linked and ADP representatives.  First, he states that all parties involved "understood" that a survey was to be completed after the contract was signed.  Second, he testified that all parties further "understood" that the survey was to be the key which would conclusively identify the property being sold.  Because Bailey cannot testify as to the states of mind of the Linked and ADP representatives, this passage is EXCLUDED from Rule 56 consideration.

> - [Linked] and [ADP] refused to pay for a survey because they "**made up their mind not to move**

**forward with the project**." Bailey's Aff. ¶ 7. Bailey cannot testify as to the motives behind Linked's or ADP's decision not to conduct a survey of the property. This passage is therefore STRICKEN.

- "[Linked] and [ADP] were **fully aware** of the specific location and legal description of the property to be purchased." Bailey's Aff. ¶ 8.
- Linked and ADP "**understood** and **knew** the specific description of the subject property." Bailey's Aff. ¶ 8.
- The location of Bailey's residence "**was known** to [Linked]." Bailey's Aff. ¶ 11.

These three passages constitute conclusory testimony regarding the knowledge or understanding by individuals or business entities. Accordingly, these passages are inadmissible and are STRICKEN.

   b) *Statute of Frauds*

Contracts for the sale and purchase of real property which fail to comply with the Statute of Frauds cannot be enforced, nor can they support an action for breach. *Shannon v. Wisdom*, 55 So. 102 (Ala. 1911). Ala. Code 1975 § 8-9-2(5). "Contracts for the sale of lands must describe the lands with such certainty that they can be identified without resorting to oral evidence. While the writing need not give a technical description of the lands contracted for, it must contain facts sufficient to identify them."

Id. at 103. However, the Statute of Frauds does not "invalidate a contract merely because it contains a general uncertain description, where that description can be made specific and certain by parol evidence of concurrent facts and circumstances sufficient to that end." *Mullinax v. Galen Marshall, Inc.*, 642 So.2d 431, 432 (Ala. 1994) (internal quotations omitted).

Linked argues that the description of the land contained in the contract is not sufficiently specific to satisfy the Statute of Frauds. In response, Bailey argues that even in the absence of a specific description, the Statute of Frauds does not void this contract. His position is based on four separate arguments. First, because Bailey was apparently selling **all** of his property in Shelby County, except for a small residential property specifically identified in the contract, the property was easily identified. Second, the Statute of Frauds does not void this contract because Linked had **actual knowledge** of the location and size of the property in question. Third, the contract contemplates a survey of the property which operates as the "key" to identify more specifically the property in question. This sounds like a contract to make a contract. Lastly, the principles of equity under the totality of circumstances precludes a Statute of Frauds defense.

Bailey's first argument is that the contract contemplates the sale of **all** his land in Shelby County except for his residence. Support for this argument is found in Section 9 of the contract, in

-10-

which Linked is required, after the closing, to grant Bailey an easement across the purchased property to benefit Bailey's residential property. Bailey's residential property is specifically identified by its *ad valorem* tax ID number. Bailey argues that this reference implicitly constitutes an exact description of the property. Citing a series of Alabama Supreme Court cases, Bailey argues that the sale of **all** his property (minus an identified parcel) is sufficient to satisfy the Statute of Frauds. *See, e.g.*, *Alabama Processing Company, Inc. v. Utilities Board of the Town of Citronelle*, 527 So.2d 690, 691 (Ala. 1988).

Standing alone, the fact that the contract calls for the sale of all of Bailey's property excluding a certain parcel is probably not sufficient to meet the Statute of Frauds. In the cases cited by Bailey, contracts for the sale of all of a seller's property usual validate the contract only when other indicia of identity are present. For example, in *Alabama Processing*, the contract contemplated a survey of the land to be sold in its entirety. "Where a seller agrees to sell **all** of its land, a future survey of the property, as called for in the contract, is a mere incident of the sale and is not a future determination of the specific property to be sold." Id. (citing *Howison v. Bartlett*, 37 So. 590 (Ala. 1904)) (emphasis in original). In the present case, while Bailey is selling a substantial majority of his property, he is not selling it all. Therefore, the holding in *Alabama Processing* is

not directly applicable. Moreover, the court in *Alabama Processing* stated:

> "[t]he record discloses, without dispute, that the [purchaser] entered into the contract with full knowledge of the location and quantity of the subject property owned by the seller. The [purchaser] does not here contend otherwise; nor does it claim misrepresentation on the part of the seller with respect to the quantity or location of the property."

Id. Therefore, Bailey's argument that the contract was in fact sufficiently detailed to comply with the Statute of Frauds, fails unless he can show that there exists either a mechanism to more definitively identify the land being sold or actual knowledge on the part of Linked.

Bailey's second argument is taken in conjunction with his first. As discussed above, for Bailey's specificity argument to be effective, he must show that Linked had full knowledge of the location and identity of the property. In the Report, the magistrate judge agreed with Bailey that, at the very least, Linked's knowledge of the identity of the property is an issue of fact for the jury.

The Report stated, "[a] reasonable jury could conclude that despite [its] denial, circumstantial evidence strongly suggests that [Linked] had within its corporate knowledge a specific understanding of the exact location of the property to be purchased." Report at 17-18. This court's evaluation of the Report is complicated by exclusion of portions of Bailey's affidavit that may have been relied upon by the magistrate judge.

-12-

Some of the statements in Bailey's affidavit relate directly to this point. However, Bailey's affidavit also contains admissible statements that support his contention that Linked and its representatives were aware of the property's location, outline and size.

In its objection to the Report, Linked argues that Thompson's knowledge of the property is immaterial in determining whether or not the contract satisfies the Statute of Frauds. Linked argues, "[w]here a buyer and seller discuss the location of a property, it is not sufficient for them to orally agree upon the location of the property. If it is necessary to resort to oral evidence of the intention of the parties as to the lands bargained for, the writing is not sufficient, and the statute is not complied with." Def.'s Objections to Mag. Judge's Findings and Recommendations at 16 (internal quotations omitted). While this may be a fair statement of the law of Alabama, the situation Linked describes is slightly, but critically, different from the facts in this case construed against movant.

Here, the writing does attempt to describe the land being sold. The description admittedly contains a degree of uncertainty. In other words, this is not a case where the contract is entirely silent on the land's identity, but rather imprecise. If the Statute of Frauds were rigidly applied to invalidate all contracts that do not explicitly and precisely describe the land being sold

-13-

by metes and bounds, Linked would have the better of this argument. However, the law does not require that the Statute of Frauds be so rigidly enforced or interpreted. In a situation, as in this case, where a description of the property exists but is not abundantly clear, the court may consider "parol evidence of concurrent facts and circumstances" which can make certain the identity of the property. *Mullinax*, 642 So.2d at 432.

Bailey testifies that he made ADP representatives aware of the property's identity and that ADP and Linked formed a partnership for purposes of entering this transaction. Therefore, whatever knowledge ADP had of the property can be imputed to Linked. In support of this position, Baily testified that he met with ADP representatives Davis and DeGorter (the founder and former president of Linked) and presented them with a large topographical containing a specific outline of the property and its acerage. Furthermore, Bailey claims that Davis and DeGorter were made aware of the tax identifications numbers of the property being sold and a topographical description of the property.

In arguing that a partnership existed between ADP and Linked, Bailey notes that Thompson arrived in Alabama on DeGorter's plane shortly before he signed the contract with Bailey at their airport meeting and that Thompson was often in the company of ADP representatives. Additionally, Bailey testified that Linked was in negotiations with other landowners with the intent to sell the land

to ADP. On the basis of these facts, the magistrate judge concluded that a finder of fact could reasonably determine that ADP and Linked were partners in a joint enterprise. Report at 18.

This court agrees with the magistrate judge that the relationship between ADP and Linked and the degree to which Linked was aware of the property's identity are disputed issues of material fact. To some extent, this conclusion is less clearly reached after this court's decision to strike certain portions of Bailey's affidavit which go to Linked's knowledge of the property. Even so, sufficient evidence remains to make summary judgment inappropriate on the Statute of Frauds defense.

*c) Conditions Precedent*

Linked next argues that it never incurred a duty to perform because a condition precedent contained in the contact was not met. Where a condition precedent remains unfulfilled, a party incurs no contractual obligation. *Fidelity & Cas. Co. of New York v. DeLoach*, 195 So.2d 789 (Ala. 1965). According to Linked, the following condition contained in the contract was never satisfied:

> There shall be no moratorium or other governmental actions (either existing, pending, **or threatened**) that would delay or otherwise impede [Linked] obtaining building permits to develop the Property consistent with its approved subdivision plan.

Section 11(a)(III) (emphasis added). In its motion for summary judgment and in its objection to the Report, Linked argues that this condition was not met for two reasons: (1) threatened

-15-

governmental action exists and existed before the termination period expired; and (2) no "approved subdivision plan" was ever created.

In considering whether Linked is correct that, as a matter of law, conditions were unfulfilled of such substantiality as to violate the contract, the court notes that Linked offers for the first time after the Report was filed the deposition of Tom Wilkins ("Wilkins"), a senior planner for the Department of Development Services for Shelby Count and a staff member for the Planning Commission of Shelby County. This court, in reviewing the Report, is permitted to consider evidence submitted for the first time in a party's objection to a magistrate judge's report and recommendation. *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006).

After reviewing all the admissible evidence, the court concludes that there is a jury question about whether any condition precedent contained in Section 11 of the contract was unfulfilled.

   *d) The "Switched" Contract*

Linked claims that Thompson was unaware of material changes to the contract when he signed the document presented to him by Bailey at their airport meeting, eliminating any meeting of the minds. As the magistrate judge correctly noted, "[w]hether [Linked] knew or should have known of the change in the text is the issue." Report at 20. Material issues of fact exist as to whether or not the

contract as signed reflects the intention of the parties and as to the materiality of the changes.

### IV. Conclusion

For the reasons discussed above, Linked's motion for summary judgment will be denied by a separate order.

DONE this 30th day of March, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE